IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FRANCIS R. MALTESE, JR.,

    Plaintiff,

v.                                    Civil Action No. 5:16CV11
                                            (STAMP)
NATIONAL ROOFING INDUSTRY
PENSION PLAN,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This civil action was brought under the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., to challenge the suspension of the plaintiff's retirement benefits. The parties have filed cros-motions for summary judgment. For the following reasons, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.

I.  Facts

The plaintiff, Francis R. Maltese, Jr. ("Maltese"), is a beneficiary under the National Roofing Industry Pension Plan ("the Plan"), a multi-employer pension plan subject to ERISA, through his membership in the United Union of Roofers, Waterproofers, and Allied Workers. Before his retirement, Maltese worked for Kalkreuth Roofing and Sheet Metal ("Kalkreuth") as a roofer, a foreman, a superintendent, and a project manager. In July 2011, Maltese informed the Plan that he intended to seek early retirement

benefits effective January 1, 2012 and applied for retirement benefits. Maltese then sent the Plan a letter in December 2011 stating that he intended to delay his retirement to May 1, 2012 and that he intended to continue working for Kalkreuth as an estimator beginning on that date. Maltese's application was approved and he began receiving monthly retirement payments as of May 1, 2012. On that date, Maltese began working as an estimator. Then, on January 1, 2015, Maltese became the "WV Operations Manager" at the Kaley Group, Inc. ("Kaley"), an entity related to Kalkreuth.

The Plan made monthly payments to Maltese from May 1, 2012 through March 2015. After learning of Maltese's work with Kaley as an Operations Manager, the Plan suspended Maltese's benefits. Maltese appealed the suspension through the Plan's claims procedure. The Plan's Board of Trustees ("the Trustees") denied Maltese's appeal, concluding that he had not actually retired on May 1, 2012, that his benefits were properly suspended, and that he must reimburse the Plan for all benefits he received since claiming retirement. Maltese then filed this civil action challenging the Trustees' decision and seeking unpaid benefits. Maltese and the Plan each filed motions for summary judgment, and the parties agree that there is no genuine dispute of material fact.

## II. Applicable Law

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine

whether either of the parties deserve judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). Under Federal Rule of Civil Procedure 56, this Court must grant a party's motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted against that party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The parties agree that there is no genuine dispute as to any material fact. Thus, the only issue is which party is entitled to judgment as a matter of law.

Where a plan subject to ERISA confers discretion to a fiduciary, the fiduciary's "decision will not be disturbed if reasonable, even if the court itself would have reached a differed

conclusion." Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000). The parties agree that the Plan provides the Trustees with discretion to make determinations regarding a pensioner's benefits.[1] In determining whether a fiduciary's discretionary decision is reasonable, the Fourth Circuit has provided a non-exclusive set of factors to be considered, including:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8)

---

[1] Section 6.1 of the Plan provides that:

> [a]ll questions or controversies whatsoever character arising in any manner or between any parties or persons in connection with this Plan or its operation, whether as to any claim for benefits, as to the construction of the language of this Plan or any rules and regulations adopted by the Trustees, or as to any writing, decision, instrument or account in connection with the operation of the Plan or otherwise, shall be submitted to the Trustees or their delegates for decision. In the event a claim for benefits has been denied, no lawsuit or other action against the Fund or its Trustees may be filed until the matter has been submitted for review under the ERISA-mandated review procedure set forth in Section 6.17. The decision on review shall be binding upon all persons dealing with the Plan or claiming any benefit hereunder, except to the extent that such decision may be determined to be arbitrary or capricious by a court or arbitrator having jurisdiction over such matter.

ECF No. 20-1 at 165.

the fiduciary's motives and any conflict of interest it
may have.

<u>Id.</u> at 342-43. Maltese's complaint implicates the first, second, third, fourth, and fifth factors, and the parties do not address the other factors.

## III. <u>Discussion</u>

Maltese challenges the Trustees' decision as to two core issues: (1) whether Maltese "retired" under the terms of the Plan; and (2) whether Maltese's work as an Operations Manager is "work in the jurisdiction of the Plan" subject to a suspension of benefits.

A. <u>Early Retirement</u>

Under § 5.4(A) of the Plan, "retirement" is defined as "complete withdrawal from any further employment in work in the jurisdiction of the Plan. No Participant shall be considered retired for purposes of the Plan until he has been withdrawn from work in the jurisdiction of the Plan for a period of 30 days or more." ECF No. 20-1 at 157. The Trustees found that Maltese did not "retire" under § 5.4(A) because his work as an estimator starting on May 1, 2012 constituted work in the "jurisdiction of the Plan" so that he did not cease work in the "jurisdiction of the Plan" for thirty days or more. Maltese argues that the Trustees abused their discretion by unreasonably interpreting the term "jurisdiction of the Plan" to include his work as an estimator and that the Plan should be equitably estopped from denying that he retired.

1. "Jurisdiction of the Plan"

Maltese argues that the term "jurisdiction of the Plan" must be interpreted as coextensive with the term "Covered Employment," and that "jurisdiction of the Plan" is at least ambiguous and should be construed against the Plan. The defendant argues that these terms are not synonymous and that "jurisdiction of the Plan" is unambiguous.

Section 5.4(A) defines "jurisdiction of the Plan" as employment in:

> (1) an industry in which employees covered by this Plan were employed and accrued benefits under this Plan as a result of such employment at the time of withdrawal, and
>
> (2) a trade or craft in which the Employee was employed at any time under the Plan, and
>
> (3) the geographic area covered by the Plan at the time of withdrawal.

ECF No. 20-1 at 157.

Section 1.2(a)(11) defines Covered Employment as:

> any employment during which the Employee has been employed by an Employer who makes or is required to make Employer Contributions with respect to such employment to the Fund under the terms of a[] [Collective Bargaining] Agreement. . . . Notwithstanding the foregoing, <u>reemployment</u> of a <u>Pensioner</u> as an estimator shall not constitute Covered Employment for purposes of Credited Service and will not constitute work within the jurisdiction of the Plan <u>in regard to suspension of benefits</u>.

ECF No. 20-1 at 109 (emphasis added).

Maltese argues that estimator work is excluded from the "jurisdiction of the Plan" under the second sentence of

6

§ 1.2(a)(11). The Trustees rejected this argument, concluding that § 1.2(a)(11) excludes estimator work from work within the "jurisdiction of the Plan" as it deals with reemployment of a "Pensioner," which is defined as somebody "who retires and receives a Pension under th[e] Plan." ECF No. 20-1 at 114. Thus, the Trustees concluded that § 1.2(a)(11)'s reemployment exception for estimator work applies only to a person who has properly retired under § 5.4(A) and resumes work as an estimator. This Court finds that the Trustees' interpretation and application of these provisions is reasonable.

First, the Trustees' interpretation of the term "jurisdiction of the Plan" is reasonable based on the unambiguous language of the Plan. The Plan defines "jurisdiction of the Plan" and "Covered Employment" separately and distinctly. While "Covered Employment" cross-references "jurisdiction of the Plan," it applies only to the reemployment of pensioners who previously retired under § 5.4(A). This cross-reference does not modify the stand-alone definition of "jurisdiction of the Plan" or its usage in § 5.4(A)'s definition of retirement. Even in § 1.2(a)(11)'s reemployment exception for estimator work, it refers to "Covered Employment" and work in the "jurisdiction of the Plan" separately, reinforcing their separate meanings. Further, the definition of "Covered Employment" uses the term "Employee" when defining employment for which an employer must provide contributions, while using the term "Pensioner" when

7

excluding estimator work from work within the "jurisdiction of the Plan" for reemployment purposes. The definition of "jurisdiction of the Plan" similarly uses the term "Employee," indicating its broader reach. Thus, the Trustees' reasonably concluded that § 1.2(a)(11)'s exclusion of estimator work from the "jurisdiction of the Plan" unambiguously applies only to the reemployment of a Pensioner.

Maltese argues that work as an estimator must be excluded from the "jurisdiction of the Plan" because under the United Union of Roofers, Waterproofers, and Allied Workers's Collective Bargaining Agreement, work as an estimator is not covered, and therefore not entitled to employer contributions under the Plan. He argues that non-Covered Employment cannot be considered work in the "jurisdiction of the Plan" because it could not have been in a "trade or craft in which the Employee was employed at any time under the Plan" as required under the definition of "jurisdiction of the Plan." ECF No. 20-1 at 157. However, § 5.4(A)'s unambiguous language defines "jurisdiction of the Plan" more broadly to include work that does not constitute "Covered Employment." Thus, the coverage of work as an estimator under the Collective Bargaining Agreement is irrelevant to whether the work is within the "jurisdiction of the Plan."

Second, the Trustees' interpretation is consistent with the Plan's goal of retaining tax-exempt status under § 401(a) of the

8

Internal Revenue Code (26 U.S.C. § 401) and applicable Treasury Regulations. A pension plan does not qualify for tax-exempt status under § 401(a) "if it permits distributions of the employer's contributions or increments thereon prior to severance of employment or termination of the plan." Internal Revenue Service Ruling 71-437 (Jan. 1, 1971). When it comes to early retirement, whether an employee has actually separated from employment is

> determined based on whether the facts and circumstances indicate that the employer and employee reasonably anticipated that <u>no further services would be performed</u> after a certain date or that the level of bona fide services . . . would <u>permanently decrease</u> to no more than 20 percent of the average level of bona fide service performed . . . over the immediately preceding 36-month period.

26 C.F.R. § 1.409A-1(h)(1)(ii) (emphasis added). Further, the Internal Revenue Service ("IRS") has concluded in a nonbinding private ruling letter that "an employee legitimately retires when he stops performing service for the employer and there is not the explicit understanding between the employer and employee that upon retirement the employee will immediately return to service with the employer." IRS Private Letter Ruling 201147038, 2011 WL 5893533, 4 (Nov. 25, 2011). The IRS concluded that such an explicit understanding does not constitute retirement because the employee does "not actually separate from service and cease performing services for the employer," and thus "[s]uch 'retirements' will violate section 401(a) of the Code and result in disqualification of the Plan." Id. While nonbinding, the IRS's analysis and

9

interpretation of § 401(a) and its relevant regulations is persuasive.

Based on the applicable regulations and the IRS's application of § 401(a), the Trustees' interpretation of "jurisdiction of the Plan" is reasonably calculated to ensure that beneficiaries intend to actually separate from employment before early retirement benefits are distributed, thus, retaining the Plan's tax-exempt status. Maltese argues that this is not the case because the thirty-day withdrawal requirement would still allow for explicit understandings that a retiree will return to work after that thirty-day period. However, compliance with § 5.4(A)'s thirty-day requirement is not sufficient for retirement, but is a necessary condition for it. Section 5.4(A) states that retirement is the "<u>complete withdrawal</u> from any further employment in work within the jurisdiction of the Plan" <u>and</u> that "[n]o participant shall be considered retired . . . until he has been withdrawn from work in the jurisdiction of the Plan for a period of 30 days or more." ECF No. 20-1 at 157 (emphasis added). Thus, to be considered retired under § 5.4(A), an employee must both separate from employment within the "jurisdiction of the Plan" for thirty days or more <u>and</u> completely withdraw from employment within the "jurisdiction of the Plan." Thus, the thirty-day requirement serves to bolster a determination that "the employer and employee reasonably anticipated that no further services would be performed after a

10

certain date." 26 C.F.R. § 1.409A-1. Thus, the Trustees' interpretation of the definition of "jurisdiction of the Plan" in the context of early retirement is reasonable and consistent with the goal of maintaining the Plan's tax-exempt status under § 401(a).

Third, the Trustees' interpretation does not present an opportunity for inconsistent application. Maltese does not present any other determinations under the Plan that reach results inconsistent with the Trustees' decision in this case. Rather, Maltese argues that the Trustees' interpretation creates the possibility of inconsistent application of the Plan's suspension provision based on when an employee begins work as an estimator. He argues that an employee would not be considered "retired" if he immediately begins working as an estimator, while an employee who "retired" with the same intention of continuing work as an estimator but simply delays this work for thirty days will not have his benefits suspended. However, the Trustees' interpretation of "jurisdiction of the Plan" ensures that only bona fide retirees receive benefits and that subsequent reemployment in work outside the "jurisdiction of the Plan" does not result in a suspension. As discussed above, a beneficiary who "retires" for thirty days with an express agreement with the employer that he will return to work as an estimator after the thirty-day period cannot receive benefits under the Plan if the Plan is to maintain its tax-exempt status.

11

Thus, Maltese's hypothetical employee who attempts to game the system by agreeing to wait thirty days before returning to work as an estimator would also not have "retired" under § 5.4(A). Thus, the Trustees' interpretation of the term "jurisdiction of the Plan" does not create inconsistent results, and this Court finds that the Trustees did not abuse their discretion in concluding that Maltese did not "retire."

    2. Equitable Estoppel

Maltese argues that the Plan should be equitably estopped from claiming he did not retire. He argues that by granting his benefits, the Plan falsely misrepresented or concealed the fact that he could not immediately begin work as an estimator and still "retire" under the plan. Maltese argues that he did not know his retirement would not be effective and that he detrimentally relied on the grant of benefits.

In the context of its application under ERISA, equitable estoppel is a matter of federal common law. 29 U.S.C. § 1132(a)(3). The traditional requirements for equitable estoppel are that:

> (1) the party to be estopped knew the true facts; (2) the party to be estopped intended for his conduct to be acted upon or acted in such a way that the party asserting estoppel had a right to believe that it was intended; (3) the party claiming estoppel was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the parties seeking estoppel.

Dawkins v. Witt, 318 F.3d 606, 611 n.6 (4th Cir. 2003).

12

Maltese knew or should have known that his plan to immediately begin work as an estimator upon retirement would not be a legitimate retirement under § 5.4(A). As a party to the Plan, Maltese was obligated to comply with its terms and had a responsibility to read and understand them. In signing his application for early retirement benefits, Maltese certified that he "underst[ood] that [his] benefit payments will not begin until [he has] withdrawn from employment covered by the Plan for at least 30 consecutive days and any payment [he] receive[d] prior to a 30 day period will be deducted from [his] future payments." ECF No. 20-1 at 89. While this portion of the application did not use the exact terms of § 5.4(A), the page before the certification quotes in full § 5.4(A)'s definition of retirement, including the thirty-day requirement and the definition of work in the "jurisdiction of the Plan." Id. at 88. Section 5.4(A)'s thirty-day requirement and complete withdrawal requirement are clear and unequivocal. Further, while Maltese may have believed work as an estimator did not qualify as work within the "jurisdiction of the Plan," he did not seek clarification of that term from the Plan and was advised by the Plan that he must comply with the thirty-day requirement. When Maltese indicated his intent to retire and immediately begin working as an estimator the Plan advised him by email that "you will have to be gone for 30 days before your benefit will start," in clear reference to § 5.4(A). ECF No. 20-1 at 95. Accordingly,

13

the Plan is not equitably estopped from finding that Maltese did not retire.

B. <u>Suspension of Benefits</u>

Under § 5.4(C),

> [t]he benefits of a Pensioner who has not yet attained Normal Retirement Age may be suspended for each month in which the Pensioner works at least 40 hours within the jurisdiction of the Plan, provided that the first 300 hours worked in Covered Employment during a calendar year shall be ignored in determining whether benefits are to be suspended, and provided further that the suspension of benefits satisfies the requirements of Department of Labor Regulation 2530.203-3.

ECF No. 20-1 at 158. The Trustees concluded that, assuming Maltese did "retire" under § 5.4(A), his benefits were properly suspended because his work as an Operations Manager is within the "jurisdiction of the Plan," triggering suspension under § 5.4(C). The Trustees found that Maltese's "Covered Employment" before retirement was as a roofer, a foreman, a superintendent, and a project manager, and that as a project manager Maltese assisted in the development of Kalkreuth's Lexington, Kentucky division. The Trustees reasoned that Maltese's employment as an Operations Manager utilized the skills he learned throughout his career, making it the same "trade or craft" as his prior work.

Section 5.4(C) affirmatively invokes the requirements of 29 C.F.R. § 2530.203-3 regarding the suspension of benefits after reemployment. Section 2530.203-3(c)(2) requires suspension in a multiemployer plan if the employee completes work in (1) "[a]n

14

industry in which employees covered by the plan were employed and accrued benefits under the plan"; (2) "[a] <u>trade or craft</u> in which the employee was employed at any time under the plan"; and (3) "[t]he geographic area covered by the plan at the time that the payment of benefits commenced or would have commenced if the employee had not remained in or returned to employment." 29 C.F.R. § 2530.203-3(c)(2) (emphasis added). This regulation is nearly identical to § 5.4(A)'s definition of work within the "jurisdiction of the Plan," and Maltese does not contest that the definitions should be read as coextensive in the context of reemployment based on § 5.4(C)'s invocation of the regulation. Maltese also does not contest that his work as Operations Manager is in the industry covered by the Plan or that it is in the geographic area covered by the Plan. Thus, the issue is whether Maltese's work as an Operations Manager is in the same "trade or craft" as his prior "Covered Employment."

The regulation defines "trade or craft" as

(A) a skill or skills, learned during a significant period of training or practice, which is applicable in occupations in some industry, (B) a skill or skills relating to selling, retailing, managerial, clerical or professional occupations, or (C) supervisory activities relating to a skill or skills described in (A) or (B) . . . . [T]he determination [of] whether a particular job classification, job description or industrial occupation constitutes or is included in a trade or craft shall be based upon the facts and circumstances of each case.

15

29 C.F.R. § 2530.203-3(c)(2)(ii). The regulation also provides the following example:

> Participation in a multiemployer plan is limited solely to electricians. Electrician E retired and then became reemployed as a foreman of electricians. Because a "trade or craft" includes related supervisory activities, E remains within his trade or craft for purposes of this section.

Id.

Maltese argues that his work as an Operations Manager is not in the same "trade or craft" as his prior work because it requires managerial skills and none of his prior employment involved the use of managerial skills. Maltese further argues that the Trustees failed to consider all of the evidence regarding his pre- and post-retirement work; specifically, evidence regarding his responsibilities as an Operations Manager that, he argues, show he is not working in the same trade or craft. Maltese further argues that his Operations Manager position cannot be considered the same trade or craft under the "supervisory activities" portion of the definition because he did not learn or use managerial skills in his prior work.

First, the record before the Trustees was adequate, and the Trustees fully considered the material submitted to them by the parties. Specifically, the Trustees reviewed a newsletter from Kalkreuth announcing Maltese's new position as Operations Manager, ECF No. 21-1, a letter from John L. Kalkreuth, President of Kalkreuth, to Jim Hadel describing Maltese's responsibilities as

16

Operations Manager,[2] ECF No. 20-1 at 44, a letter from Maltese to the Trustees regarding his work history, id. at 31-32, a letter from Mr. Kalkreuth to the Trustees clarifying Maltese's responsibilities as Operations Manager, ECF No. 20-1 at 29-30, and a letter from Maltese's counsel presenting factual and legal arguments, ECF No. 20-1 at 23-28. While the Trustees' decision does not specifically cite or refer to these materials when discussing Maltese's reemployment as Operations Manager, these materials are consistent in describing his prior covered employment and his general duties as Operations Manager, and the Trustees' findings are consistent with these materials. Thus, the record before the Trustees was adequate and the Trustees fully considered all relevant materials.

Second, the Trustees' application of "trade or craft" is in compliance with the terms of the Plan and the applicable Department of Labor regulations. Maltese's past Covered Employment included work as a roofer, a foreman, a superintendent, and a project manager. His work as a project manager was described as instrumental in developing Kalkreuth's Lexington, Kentucky

---

[2]This Court notes that in this letter, Mr. Kalkreuth, refers to Maltese's position "Estimating Coordinator." ECF No. 20-1 at 44. However, in a later letter to the Trustees, Mr. Kalkreuth clarified that his first letter described Maltese's responsibilities as Operations Manager, that "the letter's description of the job duties is accurate," and that "there was some degree of flux in the job title" at that time. ECF No. 20-1 at 29-30.

division. Although Maltese did not previously work as an Operations Manager, he surely developed management skills as a foreman, superintendent, and project manager, as he "exercise[d] executive, administrative, and supervisory direction" in these positions. Marriam-Webster, Manage, https://www.merriam-webster.com/dictionary/manage (last accessed Dec. 7, 2016).

Further, Maltese's work as Operations Manager constitutes supervisory work in areas where he has previously worked. Specifically, Maltese's duties as Operations Manager include "[p]erform[ing] estimating duties," "[o]ffice coordination between estimating and project management staff," "[o]ffice coordination between project management and engineering staff," "[a]ssisting in the development of junior Project Managers to full-time project managers," "[a]ssist[ing] project management staff in securing vendor pricing," "[s]erv[ing] as liaison between estimating staff and corporate management and/or executive management personnel," "[p]articipat[ing] in manager meetings," and "[a]ssist[ing] in discussions of and the implementation of new corporate policy and procedures." ECF No. 20-1 at 44. In Mr. Kalkreuth's letter to the Trustees, Mr. Kalkreuth clarifies Maltese's job duties as Operations manager and specifically states that he "rel[ies] on [Maltese] to guide and train new estimators and project managers to assist them in attaining the same level of performance and work ethic as he." ECF No. 20-1 at 30. Maltese exercised some level of

18

supervision over project managers and project management staff through his office coordination, project manager development, and mentorship activities. Because Maltese previously worked as a project manager, his supervision of project managers is in the same "trade or craft" as his prior work. Accordingly, the Trustees did not abuse their discretion in concluding that Maltese's benefits were properly suspended.

## IV. Conclusion

This Court finds that the Trustees did not abuse their discretion under the terms of the Plan. Accordingly, Maltese's motion for summary judgment (ECF No. 25) is DENIED and the defendant's motion for summary judgment (ECF No. 23) is GRANTED. It is further ORDERED that this civil action be STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.[3]

DATED: December 12, 2016

---

[3] The Plan has not filed a counterclaim or otherwise sought a judgment or declaration that it is entitled to repayment of all benefits paid to Maltese. Regardless, this Court notes that it would lack jurisdiction to grant such relief. See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210, 218 (2002).

19

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE